FILED
United States Court of Appeals
Tenth Circuit

July 12, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ROBERT CLIFTON TANNER,

        Defendant-Appellant.

No. 13-4022

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:12-CR-00503-DS-2)**

_____

Submitted on the motion to enforce and response:[*]

Diana Hagen, Assistant United States Attorney, David B. Barlow, United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

Scott Keith Wilson, Assistant Federal Public Defender, and Kathryn N. Nester, Federal Public Defender, Salt Lake City, Utah, for Defendant-Appellant.

_____

Before **TYMKOVICH**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

_____

**PER CURIAM**.

_____

[*]    After examining the motion to enforce the plea agreement and the response, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Robert Clifton Tanner was charged with four counts of mail fraud. He entered into a plea agreement with the United States pursuant to Fed. R. Crim. P. 11(c)(1)(C) in which he agreed to plead guilty to one count of mail fraud for which he would receive a stipulated sentence of 30 months' imprisonment. The district court accepted Tanner's guilty plea and sentenced him to the agreed 30 months' imprisonment.

As part of his plea agreement, Tanner waived his right to appeal unless the punishment imposed was greater than the parties had agreed. Despite this waiver and the imposition of the agreed sentence, Tanner brought this appeal claiming his sentence was illegal. The government has moved to enforce the appeal waiver, in accordance with *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam). We grant the government's motion.

"This court will hold a defendant to the terms of a lawful plea agreement." *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). And we will enforce an appeal waiver in a plea agreement as long as three elements are met: (1) "the disputed appeal falls within the scope of the waiver of appellate rights"; (2) "the defendant knowingly and voluntarily waived his appellate rights"; and (3) "enforcing the waiver would [not] result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. In his response to the government's motion, Tanner concedes his appeal is within the scope of the waiver. He argues, however, that the record does

not affirmatively show his waiver to be knowing and voluntary and enforcing it would be a miscarriage of justice.

"We only enforce waivers that defendants enter into knowingly and voluntarily." *Id.* at 1328-29. "Nevertheless, it is the defendant who bears the burden of demonstrating [his] waiver was not knowing and voluntary." *United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009) (alteration in original) (internal quotation marks omitted); *United States v. Edgar,* 348 F.3d 867, 872- 73 (10th Cir. 2003) (defendant "has the burden to present evidence from the record establishing that he did not understand the waiver"). In determining whether a defendant waived his appellate rights knowingly and voluntarily, "we especially look to two factors." *Hahn*, 359 F.3d at 1325. The first factor is "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and the second is whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.*

Seizing on that language, Tanner claims we cannot conclude his appeal waiver was knowing and voluntary unless there was a specific discussion about it during the Rule 11 colloquy. That is so, he says, because Rule 11 directs the district court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," Fed. R. Crim. P. 11(b)(1)(N). He assumes too much.

Determining whether a defendant knowingly and voluntarily waived his rights is a question of law, *see, e.g., United States v. Vidal*, 561 F.3d 1113, 1118 (10th Cir. 2009) (guilty plea); *United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 n. 4 (10th Cir. 2008) (plea agreement), but it is one that must be based on "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused," *North Carolina v. Butler*, 441 U.S. 369, 375 (1979) (internal quotation marks omitted). A properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Another hearing on a matter already judicially resolved would, at a minimum, be unnecessary. Motions to enforce should be, as our rules suggest, *see* 10th Cir. R. 27.2, narrow, focused and often summary. *Hahn's* emphasis on the importance of the Rule 11 colloquy is thus explained, and its language should not be over read, as Tanner is doing. In *Hahn*, we described the colloquy as one factor to be considered in a motion to enforce an appeal waiver: it is a "second way in which the content of a

defendant's waiver of appeal rights can be made known to him." 359 F.3d at 1325

(internal quotation marks omitted).[1]

In considering the totality of the circumstances, either the express language of

the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing

inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was

knowing and voluntary. But the synergistic effect of both will often be conclusive.

Here, the plea agreement and the abbreviated Rule 11 colloquy, taken together,

demonstrate Tanner's waiver to have been knowingly and voluntarily made.

Tanner was forty-five years old when he entered into the plea agreement and

held an associate's degree. The agreement discussed the waiver of appellate rights in

two different paragraphs. Paragraph 8 provided:

> I know that 18 U.S.C. § 3742(c)(1) sets forth circumstances under
> which I may appeal my sentence. However, fully understanding my
> right to appeal my sentence, and in consideration of concessions and/or
> commitments made by the United States in this plea agreement, I
> knowingly, voluntarily and expressly waive my right to appeal as set
> forth in paragraph 12 below.

Mot. to Enforce, Attach. A at 3, ¶ 8. And paragraph 12, in turn, provided in pertinent

part:

> Fully understanding my limited right to appeal my sentence, as
> referenced above in paragraph 8, and in consideration of the concessions
> and/or commitments made by the United States in this plea agreement, I

---

[1] We relied on *United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) ("The *second way* in which the content of a defendant's waiver of appeal rights can be made known to him is through the colloquy with the court required by Federal Rule of Criminal Procedure 11." (emphasis added)).

knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me [except] the right to appeal as set forth in 18 U.S.C. § 3742(c)(1), which states that I may not file a notice of appeal unless the sentence imposed is greater than the sentence set forth in this agreement.

*Id.* at 5, ¶ 12(A)(6)(a).[2]

In addition to these statements, the plea agreement contained Tanner's express acknowledgements of the following:  he was not pleading guilty due to any "threats, promises or representations" made to him by anyone; he had discussed the plea with his attorney as much as he wished and had no further questions; he was satisfied with his attorney; his "decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of [his] rights . . . and the consequences of the plea"; he had "no mental reservations concerning the plea"; and he did "not wish to make changes to this agreement because [he] agree[d] with the terms and all of the statements are correct."  *Id.* at 8.

At the change of plea hearing, the trial judge questioned Tanner about his understanding of the plea agreement, the factual basis for his plea, and his willingness to enter into the plea agreement.  The judge did not specifically mention the appeal waiver contained in paragraph 12, but did question Tanner about the provisions of paragraph 12 in general.  In response, Tanner acknowledged having

---

[2]      In its motion to enforce, the government states that, through a clerical error, the word "except" was omitted from this provision, making it appear that Tanner waived even the limited right to appeal provided in 18 U.S.C. § 3742(c)(1), which was not the parties' intent.

read each of the provisions in paragraph 12 with his attorney. He said he understood them and agreed to all of their terms. Mot. to Enforce, Attach. B, at 16. He also verbally verified the acknowledgments he made in the written plea agreement, described above, concerning his consultation with his attorney about the plea agreement, his willingness to enter into it, and his agreement with all of its terms. *Id.* at 18-19. Further, he evidenced his awareness of the terms of the plea agreement and his understanding of the proceedings when he corrected the trial judge's recitation of the factual basis for his plea contained in the agreement. *See id.* at 12-15. Based on the evidence before him, the judge found Tanner's plea to be "freely and voluntarily [made] with full knowledge of his legal rights." *Id.* at 21.

Tanner would have us ignore all this evidence, simply because the judge failed to specifically discuss the appeal waiver with him. Tellingly, he does not contend the waiver was actually unknowing or involuntary. His argument is entirely technical: without a specific Rule 11 colloquy, we cannot conclude that his waiver was knowing and voluntary. But it is Tanner's burden to prove his waiver was not knowing and voluntary. *Edgar,* 348 F.3d at 872-73 (defendant "has the burden to present evidence from the record establishing that he did not understand the waiver"). He points to no

evidence suggesting it was not. Indeed, the evidence is more than sufficient to show his appeal waiver to have been knowingly and voluntarily made.[3]

Finally, Tanner argues that even if we conclude his appeal waiver was knowing and voluntary, we should not enforce it because doing so would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1327 ("The third prong of our enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice."). According to him, enforcing the appeal waiver when the trial judge failed to question him about it during the Rule 11 colloquy would seriously affect the fairness of the proceedings. *See id.* (this court will not enforce a waiver that is "otherwise unlawful" due to an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" (internal quotation marks omitted)).

District court judges should, of course, "perform vigilantly their duties under Rule 11 . . . [because] [s]trict compliance with the requirements of Rule 11 conserves judicial resources and offers the best mechanism to ensure that defendants understand their situation . . . [and] this is especially true with appellate waivers." *Edgar*, 348 F.3d at 871 n.3.[4] But we can contemplate no reason why a failure to comply

---

[3]   Even without the appeal waiver, Tanner would be significantly limited in his right to appeal his sentence by the operation of 18 U.S.C. § 3742(c)(1) because his plea agreement included a specific sentence agreed upon by the parties.

[4]   Indeed, "it is always error for a district court to fail to discuss an appellate waiver provision during a Rule 11 colloquy, although not always reversible error." *Edgar*, 348 F.3d at 871.

with Rule 11 would be more strictly applied in considering a motion to enforce an appeal waiver than it would be in considering the waiver as part of the merits of the direct appeal. *See United States v. Dominguez-Benitez,* 542 U.S 74, 81, 83 (2004) (relief for Rule 11 error must be "tied in some way to prejudicial effect" and a defendant seeking relief from Rule 11 error to which he did not object "must show a reasonable probability that, but for the error, he would not have entered the plea"). Tanner, perhaps understandably, does not tell us why he would probably change his plea after having received the very sentence he bargained for and agreed to. His motive is transparent; he sees an opportunity to capitalize on what is, in this case, an insignificant error. On this record, the judge's failure to specifically discuss the appeal waiver entitles Tanner to no relief.

Tanner's waiver of appeal rights is enforceable: it was knowingly and voluntarily made, this appeal falls within its scope, and no miscarriage of justice could flow from enforcement. The government's motion to enforce the waiver is granted and this appeal is DISMISSED.