**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROGELIO GONSALEZ, a/k/a Nol, a/k/a
Jose Luis Chavez, a/k/a Luis Acosta-Rivas,
a/k/a Alberto Aroolo-Estrada, a/k/a
Norberto Escarcega Ramos

    Defendant - Appellant.

No. 18-2097
(D.C. No. 1:14-CR-03428-JMC-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

Rogelio Gonsalez pleaded guilty to three counts of distributing

methamphetamine. He was sentenced to 151 months' imprisonment, which was at

the low end of the Sentencing Guidelines range of 151 to 188 months. Although his

plea agreement contained an appeal waiver, he filed a notice of appeal. He indicated

in his docketing statement that he wants to appeal the denial of his motion to

withdraw his guilty plea and a sentencing enhancement. The government has moved

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to enforce the appeal waiver in Mr. Gonsalez's plea agreement pursuant to *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam).

Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id*. at 1325. Mr. Gonsalez does not dispute that his appeal is within the scope of the appeal waiver and he does not contend that enforcing the waiver would result in a miscarriage of justice. He argues, however, that he did not knowingly and voluntarily waive his appellate rights because he did not knowingly and voluntarily plead guilty.

When considering whether a waiver is knowing and voluntary, this court "especially look[s] to two factors": (1) the language of the plea agreement and (2) the adequacy of the Fed. R. Crim. P. 11 colloquy. *Id*. Mr. Gonsalez bears the burden of presenting evidence from the record to demonstrate his waiver was not knowing and voluntary. *See United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam).

The plain language of the plea agreement indicates Mr. Gonsalez knowingly and voluntarily agreed to plead guilty and to waive his appellate rights. Mr. Gonsalez's plea agreement states: "The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda)." Mot. to Enf., Ex. 1 at 15. The agreement also states: "The Defendant is aware that

2

28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant **knowingly waives the right to appeal** [his] convictions(s) and any sentence." *Id*. at 14. Finally, the paragraph above Mr. Gonsalez's signature on the plea agreement states:

> This agreement has been read to me in a language that I comprehend, and I understand the agreement. I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

*Id*. at 17.

The transcript of the plea hearing demonstrates that the district court conducted an adequate Rule 11 colloquy. Mr. Gonsalez confirmed at the hearing that he was knowingly and voluntarily pleading guilty and waiving his appellate rights. The district court asked a series of questions that established Mr. Gonsalez was not under the influence of drugs, medicines, or alcohol and that he was able to understand the proceedings. *See id*., Ex. 2 at 7-8. The court reviewed the counts to which Mr. Gonsalez was pleading guilty, confirmed he understood those charges, and then the government stated the maximum penalties for each count. *See id*. at 8-9. The following colloquy between the court and Mr. Gonsalez then took place:

> THE COURT: Now, I have a plea agreement that has been handed to me. Is this your signature at the back of this written agreement, Mr. Gonsalez?
>
> DEFENDANT: Yes.
>
> THE COURT: And was this agreement read to you in Spanish before you signed it?

3

DEFENDANT: Yes.

THE COURT: And did you and [your attorney] discuss each and every term of this agreement before you signed it?

DEFENDANT: Yes.

*Id.*, Ex. 3 at 12. The exchange continued:

THE COURT: Have you had enough time to meet with [your attorney] to discuss the charges and those possible defenses that you might have?

THE DEFENDANT: Yes.

THE COURT: And has he answered all of your questions?

THE DEFENDANT: Yes.

THE COURT: And, Mr. Gonsalez, are you satisfied with the advice and representation that you've received from [your attorney]?

THE DEFENDANT: Yes.

THE COURT: Is anyone pressuring you in any way or forcing you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you doing this voluntarily?

THE DEFENDANT: Yes.

*Id.* at 20-21.

The court also specifically addressed the appellate waiver provision during the change of plea hearing as required by Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure. *Id.* at 16-17. Mr. Gonsalez indicated that he had discussed the appellate waiver provision with his attorney and that he understood the waiver of his appeal rights. *Id.*

At the end of the hearing, the court asked one more time: "And, Mr. Gonsalez, again, are you entering into these guilty pleas voluntarily?" *Id.* at 24. Mr. Gonsalez

4

responded: "Yes." *Id.* The court then accepted Mr. Gonsalez's guilty pleas. *Id.* It found that he was "competent and capable of entering an informed plea," that he was "aware of the nature of [the] charges and the consequences of the pleas," and that his guilty pleas were "knowing [and] voluntary." *Id.*

In response to the motion to enforce, Mr. Gonsalez asserts his appellate waiver was not knowing and voluntary because his attorney "essentially browbeat him into accepting the plea." Resp. at 6. To support his contention, he cites to a pro se letter he sent to the court and to his motion to withdraw his guilty plea.

In his letter, Mr. Gonsalez indicated that he wanted to have a new attorney appointed to represent him. He said that when his attorney brought the plea offer to him, he told his attorney that he didn't agree with the plea offer and he didn't want to sign it. Mr. Gonsalez then asked his attorney what would happen if he fired him. He stated that his attorney responded, "if you fire me and don't sign right now, the prosecutor and the Judge will have a brief trial with a few people as a jury and they will give you more than 15 years." Resp., Ex. B. Mr. Gonsalez then stated, "I want you to try to understand my shock when I heard that, and honestly I signed it out of fear without understanding exactly all my real options and how it may impact my future." *Id.*

After receiving the letter, the district court held a hearing and subsequently granted the attorney's motion to withdraw and appointed new counsel for Mr. Gonsalez. Eleven months after pleading guilty, Mr. Gonsalez filed a motion to withdraw his guilty plea. In the motion, he asserted that he told counsel he didn't

5

want to enter into the plea; counsel told him if he didn't sign the plea the judge would give him 20 years in prison; Mr. Gonsalez asked what would happen if he fired counsel and counsel "became red in the face and reiterated that if Mr. Gonsalez did not sign the plea the Judge would give him 20 years in prison," and "when he was told the Judge would give him 20 years if he did not sign the plea he had no choice but to comply." *Id*., Ex. A at 3.

We conclude Mr. Gonsalez has not met his burden of demonstrating that his plea and the accompanying appellate waiver were not knowing and voluntary. Although he contends that "the text of the plea agreement and the adequacy of the Rule 11 colloquy are not enough, in this case, to overcome the evidence [he] proffered," Resp. at 8, he cites to no authority for the proposition that a defendant's unsworn allegations of coercion are sufficient to overcome his sworn declarations in writing and open court that a plea was voluntary. As we have explained, "a properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." *Tanner*, 721 F.3d at 1233. Under oath at his change of plea hearing, Mr. Gonsalez confirmed that: he understood his plea agreement, his attorney had not pressured him into signing it, he was satisfied with his attorney's representation, he was voluntarily pleading guilty, and he understood he was waiving his appellate rights. He has not submitted anything from the record in the form of a sworn statement or affidavit that would undermine the statements he made under oath during the colloquy.

Likewise, Mr. Gonsalez represented in his plea agreement that he was knowingly and voluntarily pleading guilty and waiving his appellate rights. He further represented that his guilty plea was freely and voluntarily made and not the result of force or threats. Although either the express language of the plea agreement or a proper Rule 11 colloquy "could be enough to conclude the waiver was knowing and voluntary[,] . . . the synergistic effect of both will often be conclusive." *Id*. at 1234. Here, the plea agreement and the colloquy, taken together, demonstrate that Mr. Gonsalez knowingly and voluntarily pleaded guilty and waived his appellate rights. The evidence he submitted does not support a contrary finding.

Accordingly, we grant the government's motion to enforce the appellate waiver in the plea agreement and we dismiss this appeal. We also grant the government's motion for leave to file its reply brief out of time.

Entered for the Court
Per Curiam