**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RODRIGO MORA-SANCHEZ, a/k/a
Pelon,

    Defendant - Appellant.

No. 19-1061
(D.C. No. 1:17-CR-00116-RM-11)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

Rodrigo Mora-Sanchez pleaded guilty to one count of conspiracy to distribute

and possess with intent to distribute five kilograms or more of a mixture or substance

containing a detectable amount of cocaine.  He was sentenced to 138 months'

imprisonment, which was a downward variance from the low end of the Sentencing

Guidelines range of 151 to 188 months.  Although his plea agreement contained an

appeal waiver, he filed a notice of appeal.  He indicated in his docketing statement

that he wants to appeal his sentence.  The government has moved to enforce the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appeal waiver in Mr. Mora-Sanchez's plea agreement pursuant to *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam).

Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id*. at 1325. Mr. Mora-Sanchez does not dispute that his appeal is within the scope of the appeal waiver and he does not contend that enforcing the waiver would result in a miscarriage of justice. He argues, however, that he did not knowingly and voluntarily waive his appellate rights.

When considering whether a waiver is knowing and voluntary, "we especially look to two factors": (1) the language of the plea agreement; and (2) the adequacy of the Federal Rule Criminal Procedure 11 colloquy. *Id*. Mr. Mora-Sanchez bears the burden of presenting evidence from the record to demonstrate his waiver was not knowing and voluntary. *See United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam).

The plain language of the plea agreement indicates Mr. Mora-Sanchez knowingly and voluntarily waived his appellate rights. His plea agreement states:

> The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence[.]

2

Mot. to Enf., Attach. 1 at 4. In his response, Mr. Mora-Sanchez does not challenge the validity of the waiver language in his written plea agreement.

Instead, he asserts his appellate waiver was not knowing and voluntary because "[t]he transcript from his plea hearing demonstrates his confusion." Resp. at 1. To support this assertion, he cites to several passages from the plea hearing.

In the first one, the court had been asking him about medication he was taking, and then the following exchange took place:

> THE COURT: Up to now, have you followed everything that's going on?
>
> INTERPRETER: Yes.
>
> THE COURT: You don't feel odd or strange or cloudy in your mind?
>
> INTERPRETER: Yes.
>
> THE COURT: When you say "yes," you mean I'm right? You're not cloudy in your mind, correct?
>
> INTERPRETER: Yes.

Mot. to Enf., Attach. 2 at 8. Mr. Mora-Sanchez argues that this passage shows "[h]e did not fully understand the questions asked of him." Resp. at 2. But then the court asked him just two questions later, "Are you able to think clearly and make decisions for yourself today?" Mot. to Enf., Attach. 2 at 8. And he responded, "Yes." *Id.*

In the second passage, there was an exchange between the court and Mr. Mora-Sanchez about reading the text of the charge in open court. The court said:

> THE COURT:  . . . I can, if you want me to, read out loud here in open court the text, what it says in Count 2, or you have the right to tell me that you don't need me to read it to you because you know what it says. You've gone over it with your attorney. You've had an opportunity to review it yourself. Either way is fine with me. Do you want me to read it to you or not?

3

INTERPRETER:  Yes.

THE COURT:  Which?

INTERPRETER:  Well, the charge, No. 2.

THE DEFENDANT:  Number 2.

THE COURT:  We're just missing each other a little bit.  I want you to tell me that you want me to read it to you or you don't want me to read it to you.  Which way do you want it?

INTERPRETER:  If you could read it, please.

*Id*. at 10-11.  Mr. Mora-Sanchez contends that this passage shows that the "judge noted communication difficulty during his inquiry about reading the charge in open court." Resp. at 2.  But then the following exchange took place after the court read the charge. The court asked, "Sir, did you hear the charge that I just read to you?"  Mot. to Enf., Attach. 2 at 12.  And Mr. Mora-Sanchez responded "Yes."  *Id*. at 13.  He also admitted he was "the Rodrigo Mora-Sanchez who was named in that charge."  *Id*.  And then the court asked him:  "With respect to the charge which can be simply stated as drug conspiracy, how do you wish to plead, guilty or not guilty?"  *Id*.  And he replied:  "Guilty."  *Id*.

Finally, Mr. Mora-Sanchez asserts that "[t]he record demonstrates additional confusion when the judge asked about [his] understanding of the documents he signed." Resp. at 3.  He points to the following exchange:

THE COURT: Did you sign the documents freely and voluntarily?

INTERPRETER: Yes, sir.

THE COURT: Let me ask you, do you feel you understand what the documents say?

INTERPRETER: Yes. I understand, but, you know, since it's in English.

4

THE COURT: No. I understand that. I intend to cover the core of that with you here today. I just want to make sure that as of the time you signed it, you didn't have some uncertainty in your mind as to what was going on or what you were signing.

INTERPRETER: The time. Just the time.

MR. VIGIL: I'm not sure he understands the question.

Mot. to Enf., Attach. 2 at 14-15. But then the court asked a series of follow up questions:

THE COURT: All right. Let me back up. I'm not trying to trick you. I'm not trying to trap you. I don't intend to quiz you. What I'm asking is, when you signed the documents then, when you signed it, did you believe that you understood what you were signing?

INTERPRETER: Yes.

THE COURT: And what the documents said?

INTERPRETER: Yes.

THE COURT: And what they meant?

INTERPRETER: Uh-huh.

THE COURT: I need a yes or no.

INTERPRETER: Yes.

*Id*. at 15. And this was consistent with an earlier exchange the court had with

Mr. Mora-Sanchez:

THE COURT: All right. Mr. Mora, at the time you signed these documents, did you know what you were signing?

INTERPRETER: Yes.

THE COURT: Had you reviewed the documents yourself?

INTERPRETER: With the lawyer.

THE COURT: Of course. I was just going to cover that. Were they read to you by an interpreter that he provided?

INTERPRETER: Yes.

5

THE COURT: When you went over these documents with Mr. Vigil, was he also able to answer any and all questions that you had with respect to the meaning of these documents?

INTERPRETER: Yes.

*Id*. at 13-14.

The court proceeded to review the plea agreement with Mr. Mora-Sanchez, explaining "[l]et's go over the core of these things together to make sure we're on the same page." *Id*. at 15. The court then went through all of the parts of the plea agreement in terms of what Mr. Mora-Sanchez was agreeing to do and what the government was providing in exchange.

The court also specifically addressed the appellate waiver provision during the change of plea hearing as required by Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure.

THE COURT: . . . [T]here's one more thing you agreed to do, and that is this. It's called an appellate waiver. What it means in very simple terms is this. I shouldn't have said it that way because there's nothing simple about these terms.

Normally, when an individual is convicted, whether that be at trial or on a plea, certain matters can be appealed to a higher court. In this case, that higher court is called the Tenth Circuit Court of Appeals, but its name is not important.

What you've agreed to do is that you will not appeal; in other words, go to a higher court and say something wrong happened here. In fact, you give up any right to go to a higher court and raise any complaint with respect to anything having to do with prosecution, conviction, or sentence in this case, unless one of three things happened.

. . . Unless one of these three things happens, you waive; that is, give up, any right you have to appeal anything having to do with the prosecution, conviction, or sentence in this case. Understood?

INTERPRETER: Yes. Understood.

6

THE COURT: You've also agreed as part of that waiver that you won't come back to me either; in other words, after sentencing is over, you won't come back and try and get some change or reduction in your circumstances by challenging any aspect of the prosecution, conviction, or sentence unless one of three things happens . . . . Understood?

INTERPRETER: I got it.

*Id*. at 17-18.

At the end of the hearing, the following exchange took place:

THE COURT: . . . Sir, have you understood all of the things we've talked about, you and I, this afternoon?

INTERPRETER: Yes.

THE COURT: Is there anything at all that you don't understand or want to ask me about?

INTERPRETER: Well, no, no, nothing. Thank you.

THE COURT: Okay. We're at the end of the hearing. This is the last time you have to change your mind. Mr. Mora, I ask you one last time. Do you still want to plead guilty to Count 2?

INTERPRETER: Yes.

THE COURT: Are you pleading guilty of your own free will?

INTERPRETER: Yes.

THE COURT: Are you, in fact, guilty?

INTERPRETER: Yes.

*Id*. at 33-34.

The court then accepted Mr. Mora-Sanchez's guilty plea. *Id*. at 35. It found that he was "competent and capable of entering an informed plea," that he was "aware of . . . the consequences of the plea," and that his guilty plea was "knowing and voluntary." *Id*.

7

We conclude Mr. Mora-Sanchez has not met his burden of demonstrating that his plea and the accompanying appellate waiver were not knowing and voluntary. Although he contends that he did not fully understand all of the questions asked of him and that the record demonstrates additional confusion, the court asked follow up questions or otherwise clarified the issues for him when Mr. Mora-Sanchez appeared confused. Moreover, he has not argued that the court's Rule 11 colloquy was inadequate. We have explained, "[a] properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in spite of a defendant's post hoc assertions to the contrary." *Tanner*, 721 F.3d at 1233. Under oath at his change of plea hearing, Mr. Mora-Sanchez confirmed that: he understood his plea agreement, he was voluntarily pleading guilty, and he understood he was waiving his appellate rights. He has not submitted anything from the record in the form of a sworn statement or affidavit that would undermine the statements he made under oath during the colloquy. The plea agreement and the colloquy, taken together, demonstrate that Mr. Mora-Sanchez knowingly and voluntarily waived his appellate rights. The portions of the transcript from the plea hearing that he cites do not support a contrary finding.

Accordingly, we grant the government's motion to enforce the appellate waiver in the plea agreement and we dismiss this appeal.

Entered for the Court
Per Curiam

8