**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTHONY EUGENE KELLER,

    Defendant - Appellant.

No. 22-1265
(D.C. No. 1:21-CR-00355-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **BACHARACH** and **CARSON**, Circuit Judges.
_____

Anthony Eugene Keller appeals from his prison sentence despite the appeal

waiver in his plea agreement.  The government now moves to enforce that waiver, as

permitted by *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc).

Through counsel, Keller opposes the motion.  We reject his arguments and grant the

motion.

**I.    BACKGROUND & PROCEDURAL HISTORY**

In January 2022, a grand jury in the District of Colorado indicted Keller on

one count of being a felon in possession of a firearm.  He chose to accept a plea deal

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

offered by the government.  Through that deal, he agreed to plead guilty and to waive his right to appeal the conviction or sentence.  The government, for its part, agreed that Keller deserved a three-level reduction in his offense level for acceptance of responsibility.  It also agreed to recommend a prison sentence at the low end of the guidelines range that the district court would eventually calculate.  Following a hearing, the district court accepted Keller's plea.

About a week before Keller's sentencing hearing, Keller's retained attorney filed a motion to withdraw, informing the court that Keller wanted a new, court-appointed attorney.  The district court addressed this motion in an ex parte hearing immediately before the sentencing hearing.  There, Keller explained that, due to "lack of payment," he believed his attorney had been "trying to rush through this," including "the Plea Agreement . . . and everything that came after."  Suppl. R. at 6.[1]

The district court told Keller that it would not reopen previous proceedings (such as his plea) and it would not allow Keller to delay the sentencing process by requesting a new attorney essentially on the eve of sentencing.  The district court gave Keller the option of going forward pro se, or a hybrid option in which his attorney would continue to argue for him and then the court would allow Keller himself to raise any additional arguments.  Keller elected the hybrid option and the sentencing hearing went forward, resulting in a 63-month prison sentence (the low end of the guidelines range, as calculated by the court).  This appeal followed.

---

[1] The supplemental record is sealed, but the parties quote this portion of it in their public filings.

## II.     ANALYSIS

The government's motion to enforce would normally require us to ask three questions: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325.  But we need not address a *Hahn* factor the defendant does not dispute.  *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).  Here, Keller explicitly concedes the first inquiry (scope of the waiver).

As to the second inquiry (knowing and voluntary), Keller offers two paragraphs of general principles and one paragraph explaining why this case fits within those general principles.  *See* Resp. at 8–9.  But he then offers a fourth and final paragraph directing the court's attention to the hearing on the motion to withdraw, and claiming, without elaboration, that he "raised doubt [about] the knowing and voluntary nature of the plea itself, and therefore, specific to [the government's] motion, to the waiver of his appellate rights." *Id.* at 9.

"[P]erfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review," *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994), so we could deem this argument waived.  Regardless, it is Keller's burden to demonstrate involuntariness.  *See United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013).  And "[a] properly conducted plea colloquy, particularly one containing express findings, will, in most cases, be conclusive on the waiver issue, in

3

spite of a defendant's post hoc assertions to the contrary." *Id.* Here, the district court conducted a painstakingly thorough plea colloquy. The district court confirmed, among many other things, that Keller "had enough time" to discuss the case with his attorney and was "fully satisfied with [his] counsel," that he signed the plea agreement "freely and voluntarily," that no one "pressured [him] or coerced [him], in any way, in order to get [him] to plead," and that he understood the appellate waiver (including the possible exceptions). R. vol. III at 9–10, 12, 13, 14–16. At the conclusion of the colloquy, the district court found that Keller's plea was "a knowing and voluntary one." *Id.* at 34. Arrayed against this, Keller points to the motion-to-withdraw hearing in which he vaguely expressed the feeling of being "rush[ed]." Suppl. R. at 6. We hold this is not enough to overcome the district court's findings at the change-of-plea hearing. We therefore find that Keller's plea (and the appeal waiver within it) were knowing and voluntary.

As to the third *Hahn* factor (miscarriage of justice), Keller asserts that his trial attorney was constitutionally ineffective. We held in *Hahn* that "ineffective assistance of counsel in connection with the negotiation of the waiver" could result in a miscarriage of justice. 359 F.3d at 1327 (internal quotation marks omitted). But we also stated that our holding "[did] not disturb [the] longstanding rule" that, "[g]enerally, we only consider [such] claims on collateral review." *Id.* n.13. Understanding this, Keller points us to rare cases in which we determined that an adequate record existed to adjudicate an ineffective-assistance claim on direct appeal. He then asserts that he tried to raise an ineffective-assistance claim during the

4

hearing on his lawyer's motion to withdraw, but the district court did not allow him to elaborate. Therefore, he says he did not have an opportunity to try and develop the sort of record that would allow this court to adjudicate an ineffective-assistance claim on direct appeal, so the court should remand to allow him to develop that record.

Keller's proposal is unprecedented and unnecessary. There is no right to develop an ineffective-assistance record before direct appeal, nor is there any need. A 28 U.S.C. § 2255 proceeding is more than adequate to develop any claims a defendant may wish to bring against his or her attorney. We therefore reject this argument and find that enforcing the appeal waiver would not create a miscarriage of justice.

## III.     CONCLUSION

For all these reasons, we reject Keller's arguments, grant the government's motion to enforce the appeal waiver, and dismiss this appeal.

> Entered for the Court
> Per Curiam

5