**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**October 23, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ISAIAH JUAREZ,

    Defendant - Appellant.

No. 24-1205
(D.C. No. 1:23-CR-00092-CNS-5)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

Isaiah Juarez appeals his sentence. But his plea agreement included a broad

waiver of his appellate rights, and the government moves to enforce the waiver. *See*

*United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam).

We grant the government's motion and dismiss this appeal.

### I. Background

In district court, the parties disputed whether the sentencing guidelines called

for a two-level increase to Mr. Juarez's offense level because he possessed a firearm

in connection with a drug crime. *See* U.S. Sent'g Guidelines Manual § 2D1.1(b)(1)

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(U.S. Sent'g Comm'n 2023).  The plea agreement acknowledged this dispute, noting that the government estimated an offense level of 33 based on its view that § 2D1.1(b)(1) should apply while Mr. Juarez estimated an offense level of 31 based on his view that it should not apply.  The district court ultimately decided that § 2D1.1(b)(1) applied, yielding an offense level of 33.  After calculating the guidelines range, the court imposed a sentence at the bottom of that range.

Mr. Juarez intends to challenge on appeal the district court's § 2D1.1(b)(1) ruling.

## II.  Discussion

We will enforce an appeal waiver if (1) the appeal falls within the waiver's scope, (2) the defendant knowingly and voluntarily waived the right to appeal, and (3) enforcing the waiver will not result in a miscarriage of justice.  *See Hahn*, 359 F.3d at 1325.

### A.  Scope of the Waiver

Mr. Juarez waived "the right to appeal any matter in connection with [his] prosecution, conviction, or sentence" unless (1) the sentence exceeded the statutory maximum, (2) the sentence exceeded the guidelines range for an offense level of 33 and Mr. Juarez's criminal-history category, or (3) the government appealed the sentence.  Mot. to Enforce, Attach. 1 at 2.

Mr. Juarez implies his challenge to the district court's § 2D1.1(b)(1) ruling is beyond the scope of his waiver, asserting that "the waiver appears to contemplate a correct assessment of [the] guideline range."  Resp. at 2.  Not so.  The agreement

2

makes clear the conditions that would allow Mr. Juarez to appeal. An incorrect guidelines-range calculation is not one of them. The waiver covers this appeal.

### B. Knowing and Voluntary Waiver

To determine if a waiver was knowing and voluntary, we typically focus on two factors—whether the plea agreement says the defendant knowingly and voluntarily entered into it, and whether the district court conducted an adequate plea colloquy. *See Hahn*, 359 F.3d at 1325. Mr. Juarez has the burden on this issue. *See United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam).

The plea agreement strongly suggests a valid waiver. The appeal waiver employs clear language and says that Mr. Juarez knowingly and voluntarily waived his rights.

The plea colloquy adds more evidence of a valid waiver. The district court ensured Mr. Juarez understood that, under the agreement, he could appeal his sentence only "if it exceeds the maximum sentence provided by statute," "if it exceeds the top end of the advisory guidelines range," or if the government "were to appeal the sentence." Mot. to Enforce, Attach. 2 at 16.

Mr. Juarez sees things differently, labeling the district court's advisement "complicated and unclear." Resp. at 2. But he fails to explain what about the advisement was either complicated or unclear. Without developing an argument, he emphasizes the court's statement that he could appeal if his sentence exceeded "the top end of the advisory guidelines range from the sentencing guidelines." Mot. to Enforce, Attach. 2 at 16. Granted, it would have been more precise to say Mr. Juarez

3

could appeal if the sentence exceeded the guidelines range for his criminal-history category and an offense level of 33. Still, Mr. Juarez must "present evidence from the record establishing that he did not understand the waiver." *United States v. Edgar*, 348 F.3d 867, 872–73 (10th Cir. 2003). Yet he identifies nothing in the record suggesting he misunderstood the details of the waiver. And so the court's advisement does not diminish our confidence in the validity of his unambiguous waiver.

Mr. Juarez also highlights the district court's statement at sentencing that he had a "very limited" right to appeal. Mot. to Enforce, Attach. 3 at 40. We see nothing wrong with that statement, considering the appeal waiver. Besides, the statement could not have affected Mr. Juarez's "prior decision to plead guilty and waive appellate rights." *United States v. Atterberry*, 144 F.3d 1299, 1301 (10th Cir. 1998).

Mr. Juarez gathers the centerpiece of his argument from outside the record. His appellate counsel says his plea counsel told her that he thinks the § 2D1.1(b)(1) ruling is beyond the scope of the appeal waiver. Appellate counsel further observes that Mr. Juarez surely "relied heavily" on his plea counsel. Resp. at 4. We take the implication to be that plea counsel shared his (incorrect) understanding of the waiver with Mr. Juarez, who must have then accepted the waiver with a misunderstanding of its scope. But we generally "will not consider material outside the record before the district court." *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000). For that reason, we do not consider plea counsel's statement to appellate counsel.

4

*C. Miscarriage of Justice*

Mr. Juarez makes no argument that enforcing his appeal waiver will cause a miscarriage of justice, so we need not address that issue. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005).

### III.  Disposition

We grant the government's motion to enforce the appeal waiver.  We dismiss this appeal.

Entered for the Court

Per Curiam