**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALONSO EDAIN QUINONEZ-
VELAZQUEZ, a/k/a Miguel Angel
Gonzalez, a/k/a Alex LNU,

Defendant - Appellant.

No. 25-1155
(D.C. No. 1:24-CR-00031-CNS-1)
(D. Colo.)

_____

### ORDER AND JUDGMENT*
_____

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Alonso Edain Quinonez-Velazquez pleaded guilty to one count of conspiracy to

distribute and possess with intent to distribute methamphetamine, fentanyl, heroin, and

cocaine, and one count of illegal reentry after removal subsequent to a felony conviction.

The district court sentenced him to 240 months' imprisonment on the drug trafficking

conviction and 120 months on the illegal reentry conviction, with those sentences to run

concurrently.  He filed a notice of appeal, and his docketing statement indicates he wishes

to challenge his sentence.

---

* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Quinonez-Velazquez's plea agreement contains an appeal waiver, which the government moves to enforce under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc).  We grant the motion and dismiss this appeal.

In determining whether to enforce an appeal waiver under *Hahn*, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice."  *Id.* at 1325. Quinonez-Velazquez argues his appeal is outside the scope of the appeal waiver, his waiver was not knowing and voluntary, and enforcing the waiver would result in a miscarriage of justice.

*Scope of the Waiver*

Our inquiry is to ascertain the waiver's scope according to its plain language. *See, e.g.*, *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (performing a *Hahn* scope-of-the-waiver analysis and focusing on "the plain language of the plea agreement").  "In determining a waiver's scope, we will strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights."  *Hahn*, 359 F.3d at 1325 (brackets and internal quotation marks omitted).

Quinonez-Velazquez asserts that in calculating his advisory sentencing guidelines range the district court used a total offense level of 40, resulting in a guidelines range of 360 months to life, but he argues that "through the Plea Agreement, [he] stipulated he would be sentenced based on a total offense level of

2

35." Resp. at 9-10. He therefore contends that his sentence, "imposed based on a total offense level of 40, is outside the scope of the . . . waiver." *Id.* at 10. But Quinonez-Velazquez points to no language in the plea agreement that states he can appeal his sentence if it is "based" on an offense level other than 35. The waiver language states he

> knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:
>
> (1) the sentence exceeds the maximum sentence provided in the statute[s] of conviction;
>
> (2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 35;
>
> or
>
> (3) the government appeals the sentence imposed.

Mot. to Enforce, Attach. 1 at 2-3 (brackets in original).

The plain language of the appeal waiver thus precludes appeal of any matter in connection with Quinonez-Velazquez's sentence, unless one of the three exceptions applies. Quinonez-Velazquez seems to suggest that the second exception to the waiver applies. But the district court sentenced Quinonez-Velazquez to 240 months, which is a substantial downward departure from his guidelines range at offense level 40, and *within* the guidelines range that would have applied if his offense level had been 35. He may only appeal under the second exception if "the sentence *exceeds* the top end [of the

contemplated guideline range],” *id.* at 3, which it did not.[1]  As the government argues,

“because the sentence imposed does not exceed the contemplated range, the fact that

[Quinonez-Velazquez] was sentenced at offense level 40 instead of 35 is irrelevant to the

application of the appeal waiver and the waiver applies by its plain language.”  Reply at

4.  We agree that Quinonez-Velazquez’s appeal of his sentence falls within the plain

language of his appeal waiver.

*Knowing and Voluntary*

In assessing whether an appeal waiver “is knowing and voluntary, we

especially look to two factors”:  (1) “whether the language of the plea agreement

states that the defendant entered the agreement knowingly and voluntarily,” and

(2) whether the district court conducted “an adequate Federal Rule of Criminal

Procedure 11 colloquy.”  *Hahn*, 359 F.3d at 1325.  “[T]he defendant . . . bears the

burden of demonstrating his waiver was not knowing and voluntary.”  *United States

v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (brackets and internal quotation

marks omitted).

Quinonez-Velazquez asserts that the change-of-plea transcript demonstrates

that his appeal waiver was not knowing and voluntary.  He explains that the written

plea agreement listed drug amounts from an earlier indictment, and the drug amounts

---

[1]  If the court had sentenced Quinonez-Velazquez at an offense level 35 with a
criminal history score of IV, his advisory guidelines range would have been 235-268
months.  In the plea agreement, the parties “estimated” an advisory guidelines range
of 210-262 months based on an “estimated” offense level of 35 and a “tentative”
criminal history score of III.  Mot. to Enforce, Attach. 1 at 10-11.
Quinonez-Velazquez’s 240-month sentence falls within both ranges.

he was expected to plead guilty to were higher. He says the government and district court acknowledged this error at the hearing, but when the district court asked him if he understood the discrepancy between the drug amounts, he responded, "honestly, no." Resp. at 12 (internal quotation marks omitted). He argues "[t]his record demonstrates [he] had a persistent lack of understanding of the plea and sentencing procedure and, therefore, was unable to knowingly and voluntarily waive his appellate rights." *Id.* at 12-13.

But, as the government explains, the hearing transcript reveals that after Quinonez-Velazquez expressed confusion regarding the difference between Count 1 listed in the plea agreement and Count 1 listed in the Third Superseding Indictment, the district court recessed so that Quinonez-Velazquez could discuss the issue with counsel. *See* Mot. to Enforce, Attach. 2 at 8-9. Quinonez-Velazquez then confirmed on the record that he understood what Count 1 from the Third Superseding Indictment was charging him with, and that he wanted to plead guilty to that count. *See id.* at 9.

Quinonez-Velazquez does not identify any aspects of the plea colloquy or the plea agreement that show he did not knowingly and voluntarily waive his appeal rights. In his plea agreement, he agreed that he was "knowingly and voluntarily" waiving his right to appeal. Mot. to Enforce, Attach. 1 at 2-3. In the plea colloquy, the district court reviewed the appeal waiver, explaining that Quinonez-Velazquez was waiving his "right to appeal both the conviction for Counts 1 and 18 and the sentence . . . except in very limited circumstances, and they are very limited." *Id.*,

5

Attach. 2 at 25. After reviewing the exceptions to the appeal waiver, the district court reiterated that Quinonez-Velazquez was waiving "most, if not all, of [his] appeal rights," *id.* at 27. And the court asked, "Do you understand that?" *Id.* And he responded, "Yes." *Id.*

Quinonez-Velazquez has not pointed to any inadequacies in the plea colloquy or any ambiguities with the waiver language. He has not met his burden of showing that he did not knowingly and voluntarily waive his appellate rights.

*Miscarriage of Justice*

In *Hahn*, we held that enforcement of an appeal waiver does not result in a miscarriage of justice unless it would result in one of four enumerated situations. 359 F.3d at 1327. Those four situations are: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. (brackets in original) (internal quotation marks omitted).

Quinonez-Velazquez states that his "appeal waiver was the product of a serious misunderstanding and arguably ineffective assistance at a critical stage of the proceedings." Resp. at 14. But in *Hahn*, we explained that "[g]enerally, we only consider ineffective assistance of counsel claims on collateral review." 359 F.3d at 1327 n.13. And we expressly stated that *Hahn*'s miscarriage-of-justice holding "does not disturb this longstanding rule." *Id*. We later reiterated that "[t]his rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective

assistance of counsel." *Porter*, 405 F.3d at 1144. As in *Porter*, because Quinonez-Velazquez offers no argument as to why we should depart from that general rule, "we decline to do so, especially in light of his failure to meaningfully argue the claim." *Id.*

Quinonez-Velazquez also challenges the validity of the waiver itself. "For the waiver to be invalid on the ground of unlawfulness, the unlawfulness must seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) (internal quotation marks omitted). Quinonez-Velazquez contends that "enforcing the appeal waiver within the plea agreement where [he] was unable to enter a knowing and voluntary plea" meets this standard. Resp. at 14-15 (internal quotation marks omitted). He recounts that the plea agreement estimated his guidelines range to be 210-262 months, but then the district court calculated a much higher range of 360 months to life. He asserts that "[g]iven this extreme increase in sentencing exposure as well as the confusion [he] expressed at the plea hearing, there is a clear disconnect between what [he] believed he was agreeing to and what happened." *Id.* He argues "[t]his is sufficient to undermine the fairness and integrity of the waiver itself." *Id.*

"Our inquiry is . . . whether the waiver itself is unlawful because of some procedural error or because no waiver is possible." *Sandoval*, 477 F.3d at 1208. But Quinonez-Velazquez's assertions only repeat the arguments we have rejected above regarding the scope of the waiver and whether it was knowing and voluntary—they

7

do not show how the waiver itself is unlawful.  He has not made any argument that there was procedural error or that no waiver was possible.

We conclude Quinonez-Velazquez's appeal is within the scope of his appeal waiver, his waiver was knowing and voluntary, and enforcing his waiver would not result in a miscarriage of justice.  Accordingly, we grant the government's motion and dismiss this appeal.

Entered for the Court

Per Curiam