F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**February 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRIAN SANDOVAL,

Defendant - Appellant.

No. 04-2323

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-1636 MCA)**

---

Mark D. Jarmie, Mark D. Jarmie, LLC, Albuquerque, New Mexico, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **LUCERO**, **McWILLIAMS**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

In accordance with a plea agreement with the United States Attorney for the

District of New Mexico, Brian Sandoval pleaded guilty to an information

charging him with theft and unauthorized conversion of two government vehicles,

*see* 18 U.S.C. § 641. The district court's sentence included special conditions of supervised release that restricted his contact with children. On appeal Mr. Sandoval challenges these conditions as unrelated to the crime for which he pleaded guilty and as an unnecessary restriction on his liberty. In response the government has filed a motion to enforce the provision of the plea agreement waiving Mr. Sandoval's right to appeal. We have jurisdiction under 28 U.S.C. § 1291 and grant the government's motion.

## I.    BACKGROUND

On May 25, 2004, Mr. Sandoval, a patient receiving medical and psychiatric treatment at Crownpoint Public Health Service Indian Hospital in Crownpoint, New Mexico, managed to obtain sets of automobile keys for two General Service Administration (GSA) vehicles, located one of the vehicles, and removed it from the hospital parking lot. Several days later he returned it (in damaged condition) and removed a second GSA vehicle. He was not authorized to drive either car.

Upon questioning by Crownpoint police officers Mr. Sandoval admitted to taking both vehicles and damaging the first. An information charged him with the thefts, and he entered a guilty plea on August 23, 2004.

The presentence report prepared by the probation office reviewed Mr. Sandoval's history of sexual misconduct and sex-offender treatment: In 1999, at age 17, he sexually assaulted a nine-year-old female cousin. In a federal

juvenile adjudication he was sentenced on May 21, 2001, to three years' probation for the offense. As a term of probation he was placed in various sex-offender treatment programs, none of which he successfully completed. In the summer of 2003 the Federal Bureau of Prisons' Federal Medical Center assessed Mr. Sandoval as a high-risk candidate for recidivism for various reasons, including the early onset of his behavior and his failure to participate fully in sex-offender treatment.

On November 16, 2004, the district court sentenced Mr. Sandoval to 12 months' imprisonment followed by three years of supervised release under a number of specified conditions. Four of the special conditions of release prohibited him from (1) having any contact with persons under the age of 18, without prior written permission from his parole officer; (2) working in any position that would give him access to children, without prior approval of his parole officer; (3) loitering within 100 feet of schools, parks, playgrounds, arcades, or other places used primarily by children under 18; and (4) volunteering for activities in which he would supervise children or adults with mental or physical disabilities. At sentencing he raised no objection relating to the conditions of release.

## II. DISCUSSION

Mr. Sandoval contends on appeal that the supervised-release conditions regarding contacts with children are invalid on two grounds: First, he argues that

they do not deter him from engaging in criminal conduct similar to that for which he was convicted. *See* 18 U.S.C. § 3653(b)(5) (occupation restrictions must bear "a reasonably direct relationship to the conduct constituting the offense"); *United States v. Erwin*, 299 F.3d 1230, 1232–33 (10th Cir. 2002) (applying 18 U.S.C. § 3563(b)(5)). Second, he argues that they unnecessarily deprive him of his liberty. *See* 18 U.S.C. § 3383(d)(2) (conditions of release should not restrict liberty more than reasonably necessary). He also complains that he had no notice of these special conditions before they were imposed. *See United States v. Bartsma*, 198 F.3d 1191, 1199–1200 (10th Cir. 1999) (defendant was entitled to notice of special condition of release that was not facially related to charged offense), *overruled on other grounds by United States v. Atencio*, No. 05-2279, 2007 WL 102977, at *9 (10th Cir. Jan. 17, 2007). We need not resolve the merits of these contentions, however, because he waived his right to appeal.

In *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc), we held that a waiver of appeal is enforceable so long as (1) the disputed issue falls within the scope of the waiver of appellate rights; (2) the defendant knowingly and voluntarily waived his appellate rights; and (3) enforcing the waiver does not result in a miscarriage of justice. The government contends that Mr. Sandoval's appellate waiver satisfies all three conditions.

Mr. Sandoval disagrees. He first asserts that the supervised-release conditions do not fall within the scope of his waiver. We narrowly construe the

scope of Mr. Sandoval's waiver of appeal rights. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003). But we do not hesitate to "hold a defendant to the terms of a lawful plea agreement." *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998).

Mr. Sandoval's plea agreement precludes any appeal of his sentence other than an upward departure. Paragraph 10 states:

> The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.
>
> a. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the guideline range applicable to the statute of conviction as determined by the court after resolution of any objections by either party to the presentence report to be prepared in this case, and the defendant specifically agrees not to appeal the determination of the court in resolving any contested sentencing factor. In other words, *the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the court may depart upwards from the applicable sentencing guideline range as determined by the court.*

R. Vol. I Doc. 14 at 5 (emphasis added). Supervised-release conditions are part of the sentence; and the reference to 18 U.S.C. § 3742 (the statutory basis for sentence appeals) in ¶ 10 of the plea agreement makes clear that the waiver encompasses all appellate challenges to the sentence other than those falling within the explicit exception for challenges to upward departures. *See United States v. Joyce*, 357 F.3d 921, 922–24 (9th Cir. 2004) (in construing scope of appeal waiver in plea agreement, "[t]he word 'sentence' encompasses both prison

time and periods of supervised release"); *United States v. Andis*, 333 F.3d 886, 892 n.7 (8th Cir. 2003) (similar); *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002) (similar). Mr. Sandoval has not contended either in his briefs or at oral argument that his supervised-release conditions constitute a "depart[ure] upwards" from the Sentencing Guidelines. *See United States v. Blue Coat*, 340 F.3d 539, 541 (8th Cir. 2003) ("This waiver clearly limits Mr. Blue Coat's appellate rights. The only appellate right he retained was the right to appeal a 'departure up from the guideline range.' Thus, his waiver would prevent him from appealing the conditions of his supervised release."). We therefore hold that the first *Hahn* requirement was satisfied.

Moving to the second *Hahn* requirement, we look primarily to two factors in determining whether Mr. Sandoval knowingly and voluntarily waived his appellate rights: (1) whether the language of the plea agreement states that he entered the agreement knowingly and voluntarily, and (2) whether the record reveals an adequate colloquy under Federal Rule of Criminal Procedure 11. *See Hahn*, 359 F.3d at 1325. Mr. Sandoval bears the burden to demonstrate that his waiver was not knowing and voluntary. *See United States v. Edgar*, 348 F.3d 867, 872–73 (10th Cir. 2003) (defendant "has the burden to present evidence from the record establishing that he did not understand the waiver").

Mr. Sandoval has not come close to satisfying this burden. His agreement explicitly states that he waived his appeal rights "knowingly." R. Vol. I. Doc. 14

at 5. And the Rule 11 colloquy was thorough. In particular, he was informed of the maximum penalty and how his sentence would be determined. When he was asked specifically about his waiver of appeal, he stated that he had discussed it with his attorney and understood what he was waiving.

Mr. Sandoval argues that although he knew most of the consequences of his waiver, he could not have knowingly waived his right to appeal the special conditions of his sentence, because they are not specified in the plea agreement. But "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Thus, in the context of an appeal waiver we have rejected the notion "that a defendant must know with specificity the result he forfeits before his waiver is valid." *Hahn*, 359 F.3d at 1326–27 (defendant contended that he could not have anticipated that district court would mistakenly believe that it lacked discretion to impose concurrent, rather than consecutive, sentence). Accordingly, the second *Hahn* requirement was satisfied.

As to the third *Hahn* requirement, Mr. Sandoval argues that a waiver of his appellate rights would result in a miscarriage of justice. *Miscarriage of justice*, however, has a narrow meaning in this context. We have held that it would arise only when

> 1) the district court relied on an impermissible factor such as race; 2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid; 3) the sentence exceeds the statutory maximum; or 4) the waiver is otherwise unlawful.

*United States v. Maldonado*, 410 F.3d 1231, 1233 (10th Cir. 2005) (internal quotation marks omitted); *see Hahn*, 359 F.3d at 1327. Mr. Sandoval argues only that the fourth circumstance is present here. For the waiver to be invalid on the ground of unlawfulness, the unlawfulness must "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Hahn*, 359 F.3d at 1327 (brackets and internal quotation marks omitted). The defendant bears the burden of persuasion on this point. *See United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Mr. Sandoval first asserts that the appellate waiver with regard to his supervised-release conditions is unlawful because those conditions are not specifically mentioned in the plea agreement. But this is just another way of contending that the agreement does not encompass challenges to conditions of release, a contention that we have already rejected.

Mr. Sandoval also asserts that the waiver is unlawful because it is "unlawful under 18 U.S.C. § 3742(a)(1)." Aplt.'s Resp. to Mot. for Enforcement of Plea Agreement at 7 (May 2, 2005). But § 3742(a)(1), which permits a defendant to appeal a sentence "imposed in violation of law," is simply a source of the right to appeal that was waived by the plea agreement. It does not purport

-8-

to state what is lawful or unlawful, or even when it may be waived. Mr. Sandoval's assertion is based on a misunderstanding of what must be "unlawful" for a waiver to result in a miscarriage of justice. Our inquiry is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error or because no waiver is possible. *See United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005) ("The relevant question . . . is not whether Porter's sentence is unlawful . . . , but whether . . . his appeal waiver itself [is] unenforceable."). An appeal waiver is not "unlawful" merely because the claimed error would, in the absence of waiver, be appealable. To so hold would make a waiver an empty gesture. *Cf. United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000) ("Under Nguyen's view, a waiver of appellate rights would be essentially meaningless; the waiver would be valid if the claims were meritless, but invalid if the claims were meritorious. The whole point of a waiver, however, is the relinquishment of claims *regardless* of their merit.").

In short, affirmance of Mr. Sandoval's sentence would not cause a miscarriage of justice. *Cf. Sines*, 303 F.3d at 798–99 (appellate waiver barred defendant convicted of fraud from challenging special condition of release requiring participation in sex-offender treatment program.)

Because we hold that the plea agreement precludes Mr. Sandoval's claims on appeal, we do not address his argument that the supervised-release conditions imposed by the district court are improper.

**IV. CONCLUSION**

The government's motion to enforce the plea agreement is GRANTED and this appeal is DISMISSED.