FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

JOMAR IVORY,

　　Defendant - Appellant.

No. 21-3028
(D.C. No. 2:11-CR-20108-JWL-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

This appeal arises from the district court's imposition of a special condition of supervised release on Jomar Ivory ("Defendant"). The challenged condition mandates Defendant take all mental health medications prescribed to him by his treating physician. Defendant's opening brief raises only one issue: did the district court err when imposing this special condition? In response, the Government seeks to enforce

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

an appellate waiver contained in Defendant's initial plea agreement.[1]  Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we agree with the Government that Defendant's appellate waiver should be enforced and dismiss this case.

I.

In April 2012, Defendant pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced him to 94 months' imprisonment followed by a 3-year term of supervised release.  Defendant's plea agreement contained an appellate waiver wherein he waived the right "to appeal or collaterally attack *any matter in connection with this prosecution*, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release, *as well as any sentence imposed upon a revocation of supervised release*."  ROA I at 26 (emphasis added).

Defendant was released from prison in May 2019. Six months later, the U.S. Probation Office filed a petition alleging Defendant violated multiple conditions of his supervised release.  At Defendant's first revocation hearing in May 2020, his probation officer requested the court impose a 120-day stay at a residential reentry center ("RRC") as well as "mental health conditions."  The district court imposed the 120-

---

[1] The Government previously moved to enforce this appellate waiver.  We denied this motion without prejudice and allowed the Government to raise the issue, here, in its merits brief.

day RRC condition and mandated Defendant participate in a "mental health treatment program."

Based on Defendant's "erratic behavior" upon his arrival at the RRC, Probation once again petitioned the district court for a hearing to revoke Defendant's supervised release. During this hearing in July 2020, the district court heard testimony from Seth Wescott, a licensed clinical psychologist.[2] Mr. Wescott stated, based on his analysis, that Defendant had schizophrenia and antisocial personality disorder. He recommended that Defendant receive outpatient mental health counseling. Based on this testimony, the district court continued the final revocation hearing to allow Defendant time to get treatment.

In October 2020, the court held another revocation of supervised release hearing. The district court noted that since Defendant began receiving medication, he had no further incidents in prison. The district court also stated its opinion on the importance of Defendant continuing to take his prescribed medication. Accordingly, the district court imposed another mandatory RRC term, and modified Defendant's conditions of supervised release to include, among other things, that he "take all mental health medications that are prescribed by [his] treating physician." ROA I at 114.

Probation filed a third revocation petition in December 2020 alleging the RRC discharged Defendant for threatening staff. Based on these allegations, the district

---

[2] At times the Record refers to Seth Wescott as "Mr. Westcott." In both of their briefs the parties refer to him as "Seth Wescott." We presume this to be the correct spelling and consider the record's discrepancy as a mere typographical error. ROA I at 64.

court revoked Defendant's supervised release and sentenced him to 12 months' imprisonment. The district court also imposed a 2-year term of supervised release which included the special condition that he take all mental health medications prescribed to him.

## II.

Defendant's sole challenge on appeal is that the district court plainly erred in imposing a psychiatric medication condition without making particularized findings of fact. The Government argues that we should enforce the appellate waiver in Defendant's 2012 plea agreement and dismiss this appeal. We explained the considerations taken when evaluating the enforceability of an appellate waiver in *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Under *Hahn*, we must decide: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325.

## A.

We must first consider whether the special condition of supervised release imposed upon Defendant, as part of his revocation of supervised release, falls within the scope of the waiver of appellate rights. When determining a waiver's scope, "we will strictly construe appellate waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *Id.* (cleaned up). Additionally, we interpret a plea agreement as we would any contract

and in light of what the defendant reasonably understood when he entered his plea. *See United States v. Lonjose*, 663 F.3d 1292, 1297 (10th Cir. 2011). Here, Defendant's appellate waiver states that "[t]he defendant knowingly and voluntarily *waives any right to appeal* or collaterally attack *any matter in connection with this prosecution*, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release, *as well as any sentence imposed upon a revocation of supervised release*. ROA I at 26 (emphasis added).

Defendant argues that this appellate waiver is unenforceable as it does not specifically mention its applicability to conditions of supervised release imposed as a part of Defendant's revocation of supervised release. Defendant contends that the appellate waiver treats the terms "sentence" and "conditions" as separate concepts. According to his reading, the appellate waiver only prohibits him from appealing "any sentence imposed" on revocation of supervised release—not the addition of new conditions—because the first clause of the waiver specifically mentions "components of the sentence" including "conditions" of supervised release, while the second clause does not. We do not find this argument persuasive because we have previously held that "[s]upervised-release conditions are part of the sentence" for purposes of construing the scope of the appellate waiver. *United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007).

Defendant attempts to strengthen this argument by arguing sentences serve a punitive function while supervised release serves a wholly non-punitive function. He bases this claim on the absence of § 3553(a)(2)(A) as a factor to be considered when

imposing a term of supervised release under 18 U.S.C. § 3583(c). This argument seems persuasive at first glance given Defendant's definition of "a 'sentence' as 'the punishment to be inflicted upon the convict.'" Appellant's Reply Br. 5 (quoting *Sentence*, Merriam-Webster, https://www.dictionary.com/browse/sentence). But we do not agree that all aspects of a sentence serve punitive functions. After all, the courts are mandated to consider all § 3553(a) factors when imposing sentences. Many of these factors include wholly non-punitive considerations such as the need to provide the defendant with educational training, medical care, or other correctional treatment. 18 U.S.C § 3553(a)(2)(D). Thus, to achieve the goals of § 3553(a), courts regularly impose sentences with both punitive and non-punitive aspects. As such, we do not agree with Defendant's argument that conditions of supervised release cannot be part of a sentence as they serve only non-punitive functions.

We do not find it persuasive that Defendant did not reasonably understand conditions imposed upon revocation of supervised release would be covered by this appellate waiver. Defendant agreed, after all, to "waive[] any right to appeal . . . any matter in connection with this prosecution." Therefore, when considering this plea agreement in light of what Defendant reasonably understood when he entered it, we are not persuaded that he reasonably understood conditions imposed upon revocation of supervised release to not fall within the scope of this appellate waiver. Because Defendant's conditions of supervised release are part of the "sentence imposed upon revocation of supervised release," we conclude that this appeal falls squarely within the appellate waiver's scope.

B.

Next, we consider whether the defendant knowingly and voluntarily waived his appellate rights. *Hahn*, 359 F.3d at 1325. Defendant contends that because the district court gave him conflicting information as to his right to appeal his revocation sentence, he did not knowingly waive his right to appeal. Defendant bases this claim on the fact that the district court informed him that he had the right to appeal this sentence, subject to the provisions of 18 U.S.C. § 3742. ROA II at 86–87. But the district court's statements concerning the right to appeal under § 3742 do not render Defendant's prior decision to enter this appellate waiver unknowing. *See United States v. Atterberry*, 144 F.3d 1299, 1301 (10th Cir. 1998). "[S]tatements made by a judge during sentencing concerning the right to appeal do not act to negate written waivers of that right, because statements like those made by the court during [Defendant's] sentencing do not affect a defendant's prior decision to plead guilty and waive appellate rights." *Id.*

Defendant also argues that he did not knowingly waive his right to appeal the conditions of supervised release on revocation because a revocation of supervised release creates a separate right of appeal. Appellant's Reply Br. 9. But we directly negated this argument in *United States v. Draper*, 836 F. App'x 711, 713 (10th Cir. 2020) (per curiam) (unpublished). In *Draper*, the defendant claimed that:

> his waiver does not reach the present appeal because revocation of supervised release 'is a separate post-conviction proceeding that provides a separate right of appeal.' But, as we have recognized, 'where a plea agreement includes more precise language describing the rights waived by the defendant,' a waiver can extend beyond a direct appeal from a

7

conviction and encompass post-conviction proceedings. *United States v. Lonjose*, 663 F.3d 1292, 1300 n.9 (10th Cir. 2011).

*Id.* Here, Defendant's plea agreement contains precise language describing how Defendant waived his right to appeal "any sentence imposed upon a revocation of supervised release." As such, we hold that Defendant knowingly and voluntarily waived his appellate rights.

C.

Finally, we must decide whether enforcing this appellate waiver would result in a miscarriage of justice. A miscarriage of justice only occurs: (1) if the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful. *See Hahn,* 359 F.3d at 1327. Defendant claims this waiver is otherwise unlawful—the fourth situation—because it burdens the right to appeal a future hypothetical proceeding. To satisfy the fourth factor, "the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id*. (cleaned up). Defendant's claim that this waiver is otherwise unlawful is only supported by his own assertion that this appellate waiver is the only one of its kind in the United States. He fails to cite any authority to support his assertion that enforcing this waiver will seriously affect the fairness, integrity, or public reputation of judicial proceedings. As such, we conclude that enforcement of this appellate waiver will not result in a miscarriage of justice.

8

\*            \*            \*

Defendant's appellate waiver is enforceable because the challenged conditions imposed upon revocation fall within the scope of the appellate waiver, Defendant entered into the agreement knowingly and voluntarily, and enforcement of this appellate waiver will not result in a miscarriage of justice.  We **DISMISS** this appeal.


Entered for the Court


Bobby R. Baldock
Circuit Judge