FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

July 8, 2025

Christopher M. Wolpert
Clerk of Court

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KEITH JOSEPH MEDINA,

    Defendant - Appellant.

No. 25-2026
(D.C. No. 2:23-CR-01386-MIS-1)
(D. N.M.)

_____

## ORDER AND JUDGMENT*
_____

Before **MORITZ**, **KELLY**, and **ROSSMAN**, Circuit Judges.
_____

Keith Joseph Medina pleaded guilty to an information charging him with production of child pornography in violation of 18 U.S.C. §§ 2251(a), 2256(2)(A). The district court sentenced Medina to thirty years in prison, which is the statutory maximum. He filed a notice of appeal. Medina's plea agreement contains an appeal waiver, which the government has now moved to enforce under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc). Medina has filed a response in opposition, and the government has filed a reply in support of its motion. We grant the government's motion and dismiss the appeal.

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We will enforce an appeal waiver if (1) "the disputed appeal falls within the scope of the waiver"; (2) "the defendant knowingly and voluntarily waived his appellate rights"; and (3) enforcing the waiver would not "result in a miscarriage of justice." *Id.* at 1325. The government argues that all three of these conditions are met in this case. We agree.

*Scope of the Waiver*

Our inquiry is to ascertain the waiver's scope according to its plain language. *See, e.g.*, *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (performing a *Hahn* scope-of-the-waiver analysis and focusing on "the plain language of the plea agreement"). "In determining a waiver's scope, we will strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *Hahn*, 359 F.3d at 1325 (brackets and internal quotation marks omitted).

Medina argues that "no reasonable person in [his] position could be said to reasonably understand that, by pleading guilty to one count involving one victim, he would be sentenced based on allegations concerning additional alleged victims to impose the statutory maximum sentence." Resp. at 11-12. And he asserts "[t]his is particularly true where the plea agreement is construed against the Government—which it must be here." *Id.* at 12. He therefore contends that his "sentence, which the district court imposed based on what [he] did in this case and all of the relevant conduct, which includes other victims in the case, including [his] young son, is

2

outside the scope of the relevant waiver in his Plea Agreement." *Id.* (brackets and internal quotation marks omitted).

But this is not an argument about the *scope* of the waiver; instead, Medina's argument is about his *understanding* of the waiver, which we will address in the next section. The waiver language states that he waives his right to appeal "any sentence[] at or under the maximum statutory penalty authorized by law." Mot. to Enforce, Ex. 1 at 13. Medina received a sentence within the express terms of the waiver. The waiver language also states that the "waiver extends to any challenge to the manner in which the sentence was determined or imposed[.]" *Id.* at 13-14. Medina's challenge to the manner in which the sentence was determined or imposed—the district court's consideration of other relevant conduct—falls squarely within the scope of his appellate waiver.

*Knowing and Voluntary*

In assessing whether an appeal waiver "is knowing and voluntary, we especially look to two factors": (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and (2) whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. "[T]he defendant . . . bears the burden of demonstrating his waiver was not knowing and voluntary." *United States*

*v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (brackets and internal quotation marks omitted).

Medina argues "the plea and sentencing transcripts demonstrate that [his] appeal waiver was not knowing and voluntary." Resp. at 13. We disagree.

Medina quotes from only a limited portion of the plea transcript, where he initially told the magistrate judge that he was "not fully aware of everything" contained in the plea agreement, and he was "not sure that [he] underst[ood] everything." *Id.* at 14 (internal quotation marks omitted). But after that, the magistrate judge engaged in an extended discussion with Medina about the plea agreement.

The magistrate judge began by asking Medina what he didn't understand in the agreement and Medina indicated that he did not understand the restitution portion of the plea agreement, so the judge explained to him the possible restitution that he might be required to pay. *See* Mot. to Enforce, Ex. 2 at 9-12. The judge also told him that his sentence of imprisonment could be anywhere between 15 and 30 years. *See id.* at 12.

The judge then returned to asking Medina about his understanding of the plea agreement, and if he had any other questions about it:

> THE COURT: I believe you told me earlier but I do want to ask you again. Before you signed [the plea agreement], did you read it from the beginning to the end?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you fully discuss it with your attorney?

4

THE DEFENDANT:  Yes.

THE COURT:  Is there anything right now that you'd want to—that you have questions about that you feel like you need answered at this time?

THE DEFENDANT:  No.

*Id.* at 15.

The court then asked defense counsel to summarize the plea agreement, which he did.  As part of that summary, defense counsel indicated that Medina was facing a sentence between 15 to 30 years in prison, and that he was waiving his appeal rights.  The judge then said, "So, Mr. Medina, first of all, the summary of the plea agreement that you heard, did that match up with how you understand the plea agreement?"  *Id.* at 17.  And Medina responded, "Yes."  *Id.*  The magistrate judge also reiterated that the sentencing judge could sentence Medina to the 30-year maximum, and asked Medina, "Do you understand that?"  *Id.* at 19.  And he said, "Yes."  *Id.*

The magistrate judge then reviewed the appeal waiver with Medina.  The judge said:

> Now, the next thing I want to talk to you about is the waiver of appeal rights that's in your plea agreement.  Now, you've heard me say now to everyone in front of you that ordinarily if someone comes up and pleads guilty to a charge that they're facing, if they don't agree to waive their appellate rights, they keep their appellate rights and those include the ability to appeal their conviction and maybe most importantly whatever sentence is imposed upon them.
>
> But if you plead guilty with this plea agreement, you're going to give up your right to appeal in virtually all circumstances.  There's just the one exception and that is you could argue down the road that your attorney gave you constitutionally ineffective assistance of counsel.  But any other argument that you might want to raise, whether it be on appeal or in a later collateral attack proceeding, you would not be allowed to.

5

*Id.* at 20-21.  The judge asked Medina, "Do you understand that?"  *Id.* at 21.  And he responded, "Yes."  *Id.*

Regarding a potential claim for ineffective assistance of counsel, the judge indicated that it is difficult to succeed on those claims.  The judge therefore explained, "So in a very real way, before you make this decision, you should consider that this waiver of appeal rights as a practical matter gives up all of your appeal rights given the very low likelihood of any success on an ineffective assistance of counsel."  *Id.*  And when the judge asked Medina if he understood that, Medina answered "[y]es."  *Id.*

Medina has not identified any aspect of his plea colloquy that was inadequate.  Regarding the appeal waiver, the magistrate judge complied with Rule 11 by informing Medina and determining that Medina understood "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N).  Medina also fails to address the plain language of his plea agreement, which states that he "knowingly waives the right to appeal [his] conviction(s) and any sentence[] at or under the maximum statutory penalty authorized by law."  Mot. to Enforce, Ex. 1 at 13.  Medina also "agreed and represent[ed] that this plea of guilty is freely and voluntarily made" and acknowledged "[t]here have been no representations or promises from anyone as to what sentence the Court will impose."  *Id.* at 14.

As for the sentencing hearing, Medina says defense counsel told the court that "there were many things that Medina didn't understand with respect to sentencing." Resp. at 15 (brackets and internal quotation marks omitted).  But Medina does not

6

offer any authority to support his position that his lack of understanding of the sentencing proceedings post-plea shows he did not knowingly and voluntarily waive his appeal rights. *Cf. United States v. Black*, 201 F.3d 1296, 1302 (10th Cir. 2000) (concluding "district court's remarks at sentencing could not have affected [defendant's] prior decision to enter into a plea agreement and waive his right to appeal.").

Medina has not pointed to any inadequacies in the plea colloquy or any ambiguities with the waiver language. As to his contention that he did not understand that the district court could consider other relevant conduct when imposing his sentence, the plea agreement itself says this could be a possibility. *See* Mot. to Enforce, Ex. 1 at 4 (reserving the government's "right to make known to the United States Probation Office and to the Court, for inclusion in the presentence report . . . any information that the United States believes may be helpful to the Court, including but not limited to information about any relevant conduct under USSG § 1B1.3"); *see also id.* at 5-6 (stating that the court could rely on any of the facts Medina admitted to in the plea agreement, "as well as facts in the presentence report, to determine [his] sentence"). And, as already noted, the magistrate judge confirmed Medina had read his entire plea agreement. As also already noted, the magistrate judge repeatedly warned him that he could receive a sentence of up to 30 years. Medina has not met his burden of showing that he did not knowingly and voluntarily waive his appellate rights.

7

*Miscarriage of Justice*

In *Hahn*, we held that enforcement of an appeal waiver does not result in a miscarriage of justice unless it would result in one of four enumerated situations. 359 F.3d at 1327. Those four situations are: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. (internal quotation marks omitted). Medina contends he meets the second and fourth situations because his counsel was ineffective, and his waiver is otherwise unlawful.

With respect to the second situation, we conclude Medina's claim of ineffective assistance of counsel cannot be raised on direct appeal. In *Hahn*, we explained that "[g]enerally, we only consider ineffective assistance of counsel claims on collateral review." *Id*. at 1327 n.13. And we expressly stated that *Hahn*'s miscarriage-of-justice holding "does not disturb this longstanding rule." *Id*. We later reiterated that "[t]his rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *Porter*, 405 F.3d at 1144.

We have "considered ineffective assistance of counsel claims on direct appeal in limited circumstances, but only where the issue was raised before and ruled upon by the district court *and* a sufficient factual record exists." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011). "[E]ven if the record appears to need no

8

further development, the claim [for ineffective assistance of counsel] should still be presented first to the district court in collateral proceedings . . . so the reviewing court can have the benefit of the district court's views." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). Medina does not attempt to argue that his claim of ineffective assistance falls within the limited circumstances that would permit it to be considered on direct appeal.

Regarding the fourth situation, "[f]or the waiver to be invalid on the ground of unlawfulness, the unlawfulness must seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) (internal quotation marks omitted). Medina contends that accepting "[his] plea despite his lack of understanding during the proceedings would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" Resp. at 16 (quoting *Hahn*, 359 F.3d at 1327). He then explains that he was prejudiced because: he would not have accepted the plea if he had "understood the plea agreement and the scope of the incorporated waiver," *id.* at 16-17; his sentencing "was based on unreliable or refuted facts concerning factually disputed events neither charged nor admitted," *id.* at 17; and "trial counsel admitted at sentencing he had not even explained the Government's sentencing arguments to Medina such that Medina would have any chance of defending himself against the Government's demand for a maximum sentence," *id.*

But none of these assertions show how his waiver is otherwise unlawful. We have already rejected his arguments that his sentence is outside of the scope of the

waiver and that his waiver was not knowing and voluntary, which are arguments he seems to be repeating to attempt to satisfy the miscarriage-of-justice standard.  As for Medina's assertion about errors at sentencing, that "assertion is based on a misunderstanding of what must be 'unlawful' for a waiver to result in a miscarriage of justice[;] [o]ur inquiry is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error or because no waiver is possible." *Sandoval*, 477 F.3d at 1208.  Medina's complaint about what occurred at sentencing does not show his waiver is otherwise unlawful.  Likewise, Medina's assertion about his attorney not adequately explaining the government's sentencing memorandum to him, which happened after Medina entered the plea agreement, does not show his waiver is otherwise unlawful.

We conclude Medina's appeal is within the scope of his appeal waiver, his waiver was knowing and voluntary, and enforcing his waiver would not result in a miscarriage of justice.  Accordingly, we grant the government's motion and dismiss this appeal.  This dismissal is without prejudice to Medina filing a collateral proceeding to bring a claim of ineffective assistance of counsel.[1]

Entered for the Court
Per Curiam

---

[1] This is consistent with the waiver language in Medina's plea agreement, which includes an exception for collateral challenges based on ineffective assistance of counsel.  *See* Mot. to Enforce, Ex. 1 at 14 ("[T]he defendant agrees to waive any collateral attack to the defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, *except on the issue of defense counsel's ineffective assistance*." (emphasis added)).