**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ADAM RAYMOND MASON,

    Defendant - Appellant.

No. 25-5100
(D.C. No. 4:20-CR-00157-JDR-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **FEDERICO**, Circuit Judges.
_____

Adam Raymond Mason pleaded guilty to murder in the second degree in

Indian Country.  The district court sentenced him to life in prison.  He filed a notice

of appeal.  Mason's plea agreement contains an appeal waiver, which the government

moves to enforce under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004)

(en banc).  We grant the motion and dismiss the appeal.

I. <u>Background</u>

Mason was charged by complaint with killing his five-year-old daughter.  His

first lawyer moved for a competency evaluation, explaining that Mason had

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

"reportedly told law enforcement officers that he believed his child was controlled by witchcraft" and "Mason became unable to provide appropriate responses to counsel's questions" during their meeting. R. vol. I at 25. The district court granted the motion, but then before the scheduled competency hearing, Mason's attorney moved to withdraw the motion. Defense counsel stated that Mason was now taking medication, and if he "receives his medication, [he] is able to understand the nature and consequences of these legal proceedings and properly assist counsel in the preparation of his defenses." *Id.* at 31.

When Mason appeared before the district court at the scheduled hearing, the court questioned him. According to the court, Mason "understood all questions posed to him," and "the nature of the charges against him as well as the purpose of the Court's hearing." *Id.* at 33. He was also able to list the medications he was taking and the purpose of each and told the court he "wished to withdraw the competency motion and proceed with arraignment." *Id.* The court granted the motion to withdraw the request for a competency evaluation.

Mason was then indicted on one count of first-degree murder, and one count of arson. Mason's case was initially set for a jury trial, which he moved to continue. His first court-appointed attorney then withdrew, and a Federal Public Defender (FPD) was appointed to represent him.

Mason subsequently entered into a plea agreement with the government. He agreed to plead guilty to one count of second-degree murder, which he was charged with in an information, in exchange for dismissal of the arson count. In the

agreement, he stipulated that an appropriate sentence would be 20 to 40 years, and the government stipulated that an appropriate sentence would be 40 to 60 years. The agreement also recognized that the statutory maximum was life in prison and that the district court had discretion to sentence Mason up to the statutory maximum. In the plea agreement, Mason also waived his right to appeal his conviction or sentence.

During the district court's colloquy with Mason at the change-of-plea hearing, the court stated: "Let me go back over the punishment—the potential punishment that you could receive by pleading guilty to the count in the information. You understand that you could be subject to a term of imprisonment of up to life?" Mot. to Enforce, Attach. 3 at 13. And Mason replied, "Yes, sir." *Id.*

Later in the hearing, the court asked: "do you understand that the maximum sentence that I mentioned earlier could still apply despite [your attorney's] estimates and despite the terms of your plea agreement with the government?" *Id*. at 23. Mason responded, "Yes, sir." *Id.* The court then reviewed the stipulations the parties had set forth in the plea agreement about their beliefs about the appropriate sentencing range. After doing so, it asked:

> But do you understand that that agreement is merely a suggestion and is not binding on the Court and that if for whatever reason the Court decides not to go along with those stipulations and in turn imposes a longer sentence, that you will not be permitted to withdraw your guilty plea[?] Do you understand what I have just told you?

*Id.* at 24. And Mason replied, "Yes, sir." *Id.*

In response to questioning by the court, Mason also affirmed that he understood he was waiving his right to appeal his conviction or sentence.

3

The district court held a sentencing hearing, and ultimately sentenced Mason to life in prison. He now seeks to appeal his sentence,[1] and the government moves to enforce the appeal waiver in Mason's plea agreement.

II. Discussion

In determining whether to enforce an appeal waiver under *Hahn*, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." 359 F.3d at 1325. Mason concedes his appeal falls within the scope of his appeal waiver, but he asserts his waiver was not knowing and voluntary and that enforcing the waiver would result in a miscarriage of justice.

*Knowing and Voluntary*

In assessing whether an appeal waiver "is knowing and voluntary, we especially look to two factors": (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and (2) whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* at 1325. "[T]he defendant . . . bears the burden of demonstrating his waiver was not knowing and voluntary." *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (brackets and internal quotation marks

---

[1] The FPD representing Mason filed the notice of appeal, but then this court granted the FPD's motion to withdraw as counsel and substituted a court-appointed attorney as counsel for Mason on appeal.

omitted).  As discussed below, Mason has not demonstrated that his waiver was not knowing and voluntary.

Rule 11 states, "[b]efore the court accepts a plea of guilty or nolo contendere, . . . the court must address the defendant personally in open court" and "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N).  During the plea colloquy, the district court asked Mason, "do you understand that as a part of your plea agreement . . . , that you're generally giving up the right to challenge this prosecution, your conviction, or your sentence in this case whether it's by direct appeal or by collateral attack?"  Mot. to Enforce, Attach. 3 at 25-26.  And he responded, "Yes, sir."  *Id.* at 26.

But Mason argues that the district court's Rule 11 plea colloquy "did not serve its intended constitutional function of ensuring a knowing and voluntary waiver," because he "denied ever having been treated for mental illness" despite the record elsewhere showing otherwise.  Resp. at 10.  He therefore asserts that "[b]ecause the court accepted these inaccurate statements at face value without reconciling them against the existing record, the colloquy cannot be relied upon as evidence that [he] understood the rights he was waiving."  *Id.*  But Mason does not offer any authority to support his assertion.

Earlier in the hearing, the district court asked Mason if he had been treated for mental illness, and he replied "No."  Mot. to Enforce, Attach. 3 at 11.  But then the court asked Mason if he was taking any medications, and he responded yes, and

described them as "antidepressants or psychiatric meds." *Id.* at 12.  The district court next asked Mason about three specific medications that Mason had listed in his petition to enter a guilty plea and confirmed the purpose of each—one was for sleep, one was an anti-depressant, and one was a mood stabilizer.  After reviewing the medications he was taking, the court asked Mason, "[i]s there anything about taking those three medications that would affect your ability to understand what we're doing here today?" *Id.* at 13.  And he responded, "No, sir." *Id.*  The court also asked, "Are you able to think clearly today?" *Id.*  And Mason replied, "Yes, sir." *Id.*

Mason's response about his medications suggests he was being treated for mental health issues, which does seem to contradict his initial response indicating he had never been treated for mental illness.  But the district court questioned him about the medications he was taking and whether they impacted his ability to understand the proceedings, and Mason responded they did not.

Mason contends that during an earlier incarceration with the Oklahoma Department of Corrections he was diagnosed with bipolar disorder, anxiety, major depressive disorder, and mood affective disorder, and that prior to sentencing in this case, his trial counsel submitted a forensic psychological report indicating that Mason suffered from various psychiatric disorders, including schizophrenia.  He concludes his argument by making the conclusory assertion that "[g]iven the magnitude of [his] psychotic disorders as well as the lack of consistent or proper treatment, it cannot be said that he was able to enter a knowing and voluntary plea and waive his appellate rights."  Resp. at 11.  But Mason does not support this assertion with any record

evidence that shows he did not receive consistent or proper treatment or that he was not able to enter a knowing and voluntary plea.

Although Mason's first attorney requested a competency examination, the attorney subsequently moved to withdraw the request. In its order granting that motion, the court explained that Mason was able to understand and respond to the court's questions appropriately. During the change-of-plea hearing, Mason's second attorney, an FPD, was asked "do you believe that [Mason] is competent to plead guilty today and that he should be permitted to plead guilty?" Mot. to Enforce, Attach. 3 at 32. And the FPD replied, "Yes, judge." *Id.*

The court then asked Mason, "[i]s your plea of guilty and the waiver of your rights made voluntarily and completely of your own free choice?" *Id.* at 33. And he replied, "Yes, sir." *Id.* The language in Mason's plea agreement also states that he "knowingly and voluntarily" waives his right "to directly appeal the conviction and sentence." Mot. to Enforce, Attach. 1 at 3.

Mason "has the burden to present evidence from the record establishing that he did not understand the waiver." *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003). Because Mason fails to present evidence from the record to dispute his own written and verbal assertions, we conclude that his appeal waiver was knowing and voluntary.

*Miscarriage of Justice*

In *Hahn*, we held that enforcement of an appeal waiver does not result in a miscarriage of justice unless it would result in one of four enumerated situations.

7

359 F.3d at 1327. Those four situations are: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. (brackets in original) (internal quotation marks omitted). Mason contends that "[t]he waiver here was the product of a serious misunderstanding compounded by [his] untreated mental illness and psychotic disorders and ineffective assistance at a critical stage." Resp. at 13.

He asserts that his counsel was ineffective for abandoning a competency evaluation, and that "[t]his deficient performance directly infected the validity of the plea and the associated waiver." *Id.* at 14. He contends that "[u]nder *Hahn*, such ineffective assistance at the plea stage renders enforcement of the appellate waiver a miscarriage of justice." *Id.* But in *Hahn*, we explained that "[g]enerally, we only consider ineffective assistance of counsel claims on collateral review." 359 F.3d at 1327 n.13. And we expressly stated that *Hahn*'s miscarriage-of-justice holding "does not disturb this longstanding rule." *Id*. We later reiterated that "[t]his rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005). As in *Porter*, because Mason offers no argument as to why we should depart from our general rule, we decline to do so. *See id.*

Mason also challenges the validity of the waiver itself. "For the waiver to be invalid on the ground of unlawfulness, the unlawfulness must seriously affect the

8

fairness, integrity or public reputation of judicial proceedings." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) (internal quotation marks omitted). Mason explains he mistakenly understood his sentencing exposure to be capped at 60 years, and he asserts this misunderstanding meant he did not knowingly waive his appellate rights. He contends that "[g]iven this extreme increase in sentencing exposure [to life in prison] as well as [his] mental illness and psychotic disorders underlying this entire case, there is a clear disconnect between what [Mason] believed he was agreeing to and what happened." Resp. at 14. He argues "[t]his is sufficient to undermine the fairness and integrity of the waiver itself[,] [s]o accepting [his] plea would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 14-15 (quoting *Hahn*, 359 F.3d at 1329).

"Our inquiry is . . . whether the waiver itself is unlawful because of some procedural error or because no waiver is possible." *Sandoval*, 477 F.3d at 1208. But Mason's assertions do not show how the waiver itself is unlawful; instead, they focus in large part on arguing his waiver was not knowing and voluntary—an argument we have already rejected. He has not made any argument that there was procedural error or that no waiver was possible.

Mason concedes his appeal is within the scope of his appeal waiver. We conclude his waiver was knowing and voluntary, and enforcing his waiver would not result in a miscarriage of justice.

Accordingly, we grant the government's motion and dismiss this appeal.

Entered for the Court

Per Curiam