**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NOEL CARIAS MARIN,

    Defendant - Appellant.

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

No. 25-3190
(D.C. No. 6:23-CR-10051-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Noel Carias Marin pleaded guilty pursuant to a plea agreement to one count of distribution of methamphetamine. The district court sentenced him to 210 months in prison, which was within his Sentencing Guidelines range of 188 to 235 months. He filed a notice of appeal. Marin's plea agreement contains an appeal waiver, which the government moves to enforce under *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc). We grant the motion and dismiss the appeal.

In determining whether to enforce an appeal waiver under *Hahn*, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights;

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. The government argues Marin's appeal is within the scope of the waiver, he knowingly and voluntarily waived his appeal rights, and enforcing the waiver would not result in a miscarriage of justice. Marin concedes his appeal is within the scope of his waiver, so we need not address that *Hahn* factor. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005). But he contends his appeal waiver was not knowing and voluntary and that enforcing the waiver would result in a miscarriage of justice.

*Knowing and Voluntary*

In assessing whether an appeal waiver "is knowing and voluntary, we especially look to two factors": (1) "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and (2) whether the district court conducted "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. "[T]he defendant . . . bears the burden of demonstrating his waiver was not knowing and voluntary." *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (brackets and internal quotation marks omitted).

The plea agreement states that Marin "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release." Mot. to Enforce, Attach. A at 5. The language of the plea agreement supports the government's position that the waiver

2

was knowing and voluntary.  Nonetheless, Marin contends his waiver was not knowing and voluntary because he could not read English, and the only copy of the plea agreement was in English.  While it is true he was provided with only an English-language copy of the plea agreement, Marin omits the context of what happened when the court inquired about the plea agreement during his plea colloquy.

At the plea hearing, an interpreter assisted Marin.  The court first asked if Marin had gone over the plea agreement and discussed it with his attorney.  He said he had.  The court then asked if Marin had been given a Spanish copy of the plea agreement or if someone had read and interpreted it for him.  Initially, Marin said he was given the plea agreement in Spanish, but after further clarification from his attorney, the court was informed that Marin received the petition to plead guilty in Spanish, but not the plea agreement.  His attorney explained:

> I am confident that Mr. Marin understands what's within in [sic] the plea agreement, that he understands the document, and the promises made therein.  I would advise the Court, he did receive a copy of the petition in Spanish but not the agreement itself.  The agreement itself has been read to him and he understands it.

Mot. to Enforce, Attach. B at 9.

The following exchange then took place:

THE COURT: Read to him and interpreted. Is that what you said?

MR. EDWARDS [defense counsel]: Mr. Marin's spoken English is actually very -- he is a very capable English speaker, just not a very capable English reader. So the plea agreement was read to him and he understands it.

THE COURT: It was read to him in English?

MR. EDWARDS: Yes.

THE COURT: So it was not read and interpreted?

3

MR. EDWARDS: No. The plea agreement itself was not interpreted. His English is very good. He understands.

THE COURT: Okay. But the petition, he received a Spanish copy of?

MR. EDWARDS: He did. Yes, sir.

*Id.* at 9-10.

The court then spoke directly to Marin to follow up regarding what his attorney had said, stating "[counsel] indicated to me that the plea agreement was read to you in English but that your English was good enough that you understood what it said; is that correct?" *Id.* at 10. And Marin responded, "Yes." *Id.* The court continued with this inquiry asking, "Did you understand—as this plea agreement was read to you in English, did you understand everything that it said?" And Marin responded, "Yes." *Id.* The court again asked, "And you understand it?" *Id.* And Marin said "Yes." *Id.* at 11.

The court acknowledged that Marin and his attorney had assured it that Marin understood the plea agreement, but the court explained to Marin that it wanted "to go through some of the provisions in this plea agreement with you here in open court just to satisfy myself that you understand them." *Id.* at 11. The court then proceeded to review the plea agreement with Marin, including the appeal waiver. After identifying some of the appeal rights Marin would have absent the plea agreement, the court then explained that under the waiver provision in paragraph 10, "you are agreeing to waive all of those—almost all of those appeal rights that you would otherwise have." *Id.* at 20. It further explained, "[b]y [and] large, unless I gave you a sentence longer than the longest end of the recommend[ed] guideline range or

4

unless the United States filed its own appeal, other than that, you are agreeing to waive any appeal rights you would otherwise have." *Id.* The court asked, "Do you understand that?" And Marin responded, "Yes." *Id.* The court then asked, "And are you agreeing to do that?" *Id.* Marin answered "Yes." *Id.*

Rule 11 states, "[b]efore the court accepts a plea of guilty or nolo contendere, . . . the court must address the defendant personally in open court" and "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). The district court conducted the required Rule 11 discussion of the waiver provisions in the plea agreement during the plea colloquy, and Marin affirmed his understanding that he was agreeing to waive his appeal rights. The court also inquired about Marin's understanding of the plea agreement based on the fact that it had been provided to him only in English. Both Marin and his attorney told the court that Marin understood the plea agreement when it was read to him in English.

The language of the plea agreement states that Marin knowingly and voluntarily waived his appeal rights, and the court conducted an adequate Rule 11 plea colloquy. Marin has not shown that his waiver was not knowing and voluntary.

*Miscarriage of Justice*

In *Hahn*, we held that enforcement of an appeal waiver does not result in a miscarriage of justice unless it would result in one of four enumerated situations. 359 F.3d at 1327. Those four situations are: "[1] where the district court relied on

an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id*. (brackets in original) (internal quotation marks omitted).

Marin asserts that his waiver is otherwise unlawful, which means "[o]ur inquiry is . . . whether the waiver itself is unlawful because of some procedural error or because no waiver is possible." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007). Further, "[f]or the waiver to be invalid on the ground of unlawfulness, the unlawfulness must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). To support his allegation that the waiver is unlawful, he reiterates his argument that the plea agreement was not knowing or voluntary. That is the basis on which he asserts enforcing his appeal waiver would "be otherwise unlawful and a miscarriage of justice." Resp. at 11.

This circular argument does not support his position that the waiver itself is unlawful, and we have already determined that the waiver was knowing and voluntary. He has not argued that there was procedural error or that no waiver was possible, so he has failed to show his waiver is otherwise unlawful.

Marin does not dispute that his appeal is within the scope of his appeal waiver. We conclude his waiver was knowing and voluntary, and enforcing his waiver would not result in a miscarriage of justice. Accordingly, we grant the government's motion to enforce the appeal waiver, and we dismiss this appeal.

Entered for the Court

Per Curiam